**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**LOUISVILLE DIVISION**
**CIVIL ACTION NO. 3:24-CV-00372-CHL**

**KEVIN T.,[1]**  **Plaintiff,**

**v.**

**COMMISSIONER OF SOCIAL SECURITY,**  **Defendant.**

**MEMORANDUM OPINION AND ORDER**

Before the Court is the Complaint filed by Plaintiff, Kevin T. ("Claimant"). Claimant seeks judicial review of the final decision of the Commissioner of Social Security ("the Commissioner"). (DN 1.) Claimant and the Commissioner each filed a Fact and Law Summary and/or supporting brief. (DNs 13, 14, 16.) Claimant also filed a reply. (DN 17.) The Parties have consented to the jurisdiction of a Magistrate Judge to enter judgment in this case with direct review by the Sixth Circuit Court of Appeals in the event an appeal is filed. (DN 11.) Therefore, this matter is ripe for review.

For the reasons set forth below, the final decision of the Commissioner is **AFFIRMED**.

**I.   BACKGROUND**

On November 17, 2021, Claimant applied for supplemental security income under Title XVI ("SSI"). (R. at 30, 75, 81-83, 170-79.) His application alleged disability beginning on November 16, 2016, due to a back injury, inability to move/bend his foot, use of a cane, and lack of control over his bladder. (*Id.* at 75, 83.) Claimant's application was denied initially and again on reconsideration. (*Id.* at 92-96, 103-05.)

---

[1] Pursuant to General Order 23-02, the Plaintiff in this case is identified and referenced solely by first name and last initial.

At Claimant's request, Administrative Law Judge ("ALJ") Steven Collins ("the ALJ") conducted a hearing on Claimant's application on March 7, 2023. (*Id.* at 47-74, 106-09.) Claimant attended the hearing by telephone with his non-attorney representative. (*Id.* at 30, 49-50.) An impartial vocational expert also participated in the hearing. (*Id.* at 49.) During the hearing, Claimant testified, in relevant part, to the following. He was involved in a serious motor vehicle accident in 2016. (*Id.* at 56.) He has difficulties with his bowels due to nerve damage including inability to control them. (*Id.* at 57.) He can walk a block if he needs to but will still experience pain on his left side and in his feet and calves. (*Id.* at 58.) He uses a cane in his left hand and couldn't walk a block without it; he also needs the cane for balance. (*Id.* at 58-60.) He has used some sort of assistive device since his accident. (*Id.* at 58-59.) He sometimes falls even when he is using the cane. (*Id.* at 67.) He spends most of his time lying down due to pain in his back, legs, and right foot. (*Id.* at 60-61.)

The ALJ issued an unfavorable decision on Claimant's application on May 23, 2023. (*Id.* at 27-46.) Applying the five-step sequential evaluation process promulgated by the Commissioner to determine whether an individual is disabled, the ALJ made the following findings. First, the Claimant had not engaged in substantial gainful activity since November 17, 2021, his application date. (*Id.* at 32.) Second, Claimant had the following severe impairments: history of lumbar fractures, spinal cord injury, and fusion; right food drop; neuralgia; depressive disorder; and trauma-related disorder. (*Id.*) Third, Claimant did not have an impairment or combination of impairments that met or medically equaled any of the listed impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1. (*Id.* at 33.) Fourth, Claimant had the residual functional capacity ("RFC") to perform less than the full range of sedentary work with the following exceptions:

> The claimant can lift/carry less than 10 pounds frequently and up to 10 pounds occasionally; stand/walk 2 hours and sit 6 hours in an 8-hour workday. The

> claimant can occasionally climb ramps and stairs but never climb ladders, ropes, or scaffolds; occasionally balance, stoop, kneel, crouch, and crawl; avoid concentrated exposure to vibration; and avoid all exposure to dangerous machinery and unprotected heights. The claimant requires a cane for ambulation. The claimant can understand, remember, and carry out simple, routine tasks and make simple work-related decisions with few, if any, workplace changes, for two hour segments over an 8-hour workday and have occasional contact with supervisors, coworkers, and the public.

(*Id.* at 35.) Additionally at step four, the ALJ found that Claimant had no past relevant work. (*Id.* at 40.) Fifth, and finally, considering Claimant's age, education, work experience, and RFC, the ALJ found that there were jobs that existed in significant numbers in the national economy that Claimant could perform. (*Id.* at 41.) The ALJ concluded that Claimant was not under a disability from November 16, 2021, through the date of his decision. (*Id.*)

Claimant subsequently requested an appeal to the Appeals Council, which denied his request for review on February 28, 2024. (*Id.* at 15-21, 167-69, 242-45.) At that point, the ALJ's decision became the final decision of the Commissioner. *See* 20 C.F.R. § 422.210(a) (2024); *see also* 42 U.S.C. § 405(h) (discussing finality of the Commissioner's decision). Claimant requested and was granted an extension of time to file a civil action through July 23, 2024. (R. at 1-14.) Accordingly, Claimant timely filed this action on June 19, 2024. (DN 1.)

## II.    DISCUSSION

The Social Security Act authorizes payments of SSI to persons with disabilities. *See* 42 U.S.C. §§ 1381-1383f. An individual shall be considered "disabled" if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A); *see also* 20 C.F.R. § 416.905(a) (2024).

### A.     Standard of Review

The Court may review the final decision of the Commissioner but that review is limited to whether the Commissioner's findings are supported by "substantial evidence" and whether the Commissioner applied the correct legal standards.  42 U.S.C. § 405(g); *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997).  "Substantial evidence" means "more than a mere scintilla"; it means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  The Court must "affirm the Commissioner's decision if it is based on substantial evidence, even if substantial evidence would also have supported the opposite conclusion." *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 374 (6th Cir. 2013); *see Smith v. Sec'y of Health & Hum. Servs.*, 893 F.2d 106, 108 (6th Cir. 1989) (holding that if the court determines the ALJ's decision is supported by substantial evidence, the court "may not even inquire whether the record could support a decision the other way").  However, "failure to follow agency rules and regulations" constitutes lack of substantial evidence, even where the Commissioner's findings can otherwise be justified by evidence in the record.  *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011).

### B.     Five-Step Sequential Evaluation Process for Evaluating Disability

The Commissioner has promulgated regulations that set forth a five-step sequential evaluation process that an ALJ must follow in evaluating whether an individual is disabled.  20 C.F.R. § 416.920 (2024).  In summary, the evaluation process proceeds as follows:

(1)    Is the claimant involved in substantial gainful activity?  If the answer is "yes," the claimant is not disabled.  If the answer is "no," proceed to the next step.

(2)    Does the claimant have a medically determinable impairment or combination of impairments that satisfies the duration requirement[2] and

---

[2] To be considered, an impairment must be expected to result in death or have lasted/be expected to last for a continuous period of at least twelve months.  20 C.F.R. § 416.909 (2024).

4

        significantly limits his or her physical or mental ability to do basic work activities? If the answer is "no," the claimant is not disabled. If the answer is "yes," proceed to the next step.

(3)      Does the claimant have an impairment that meets or medically equals the criteria of a listed impairment within 20 C.F.R. Part 404, Subpart P, Appendix 1? If the answer is "yes," the claimant is disabled. If the answer is "no," proceed to the next step.

(4)      Does the claimant have the RFC to return to his or her past relevant work? If the answer is "yes," then the claimant is not disabled. If the answer is "no," proceed to the next step.

(5)      Does the claimant's RFC, age, education, and work experience allow him or her to make an adjustment to other work? If the answer is "yes," the claimant is not disabled. If the answer is "no," the claimant is disabled.

20 C.F.R. § 416.920(a)(4).

The claimant bears the burden of proof with respect to steps one through four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). However, the burden shifts to the Commissioner at step five to prove that other work is available that the claimant is capable of performing. *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 423 (6th Cir. 2008). The claimant always retains the burden of proving lack of RFC. *Id.*; *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 392 (6th Cir. 1999).

    **C.**    **Claimant's Contentions**

Claimant made only one argument: that the ALJ's RFC analysis was not supported by substantial evidence because it did not adequately explain the ALJ's finding that Claimant needed a cane for ambulation as opposed to for both ambulation and balance. (DNs 13, 14, 17.)

An ALJ's RFC finding is the ALJ's ultimate determination of what a claimant can still do despite his or her physical and mental limitations. 20 C.F.R. §§ 416.945(a)(1), 416.946(c) (2024). The ALJ bases his or her determination on all relevant evidence in the case record. 20 C.F.R. § 416.945(a)(1)-(4). Thus, in making his or her determination of a claimant's RFC, an ALJ must

necessarily evaluate the persuasiveness of the medical opinions in the record and assess the claimant's subjective allegations. 20 C.F.R. §§ 416.920c, 416.929 (2024). Here, despite Claimant's argument that the ALJ did not explain his reasoning regarding Claimant's use of cane, the ALJ's decision, read as a whole, thoroughly explains his findings and the basis for them.

Here, the ALJ found at step two that Claimant's history of lumbar fractures, spinal cord injury and fusion, right foot drop, and neuralgia were severe impairments that significantly limited Claimant's ability to perform basic work activities. (R. at 32.) At step four, he determined that Claimant had the RFC to perform less than a full range of sedentary work and that Claimant required a cane for ambulation in addition to certain other opined exertional and non-exertional limitations. (*Id.* at 35.) In support of that RFC finding, the ALJ summarized Claimant's testimony that he uses a cane for both ambulation and balance but found that Claimant's testimony regarding his impairments was not consistent with the medical evidence and other evidence in the record. (*Id.* at 36.) The ALJ then summarized relevant portions of the medical evidence of record. The ALJ noted that Claimant had been involved in a serious car accident in November 2016 as a result of which he suffered spinal injuries and had "near complete paralysis of [his] bilateral lower extremities." (*Id.*) The ALJ recounted that Claimant completed both physical and occupational therapy, progressing from a wheelchair to two forearm crutches to one crutch to a cane. (*Id.* at 36-37.) He noted that Claimant was ambulatory at a consultative physical exam in May 2017 while wearing a right ankle brace and using a one-forearm crutch. (*Id.* at 37.) The ALJ emphasized that the examiner documented poor balance, decreased strength in the bilateral lower extremities, and decreased sensation below the waist. (*Id.*) The examiner also noted that Claimant's spinal cord injury had "recovered to an ASIA D spinal cord injury." (*Id.*) The ALJ then emphasized that Claimant had treated conservatively with his primary care provider and pain management since

then. (*Id.*) The ALJ noted Claimant had previously used an orthotic right foot brace but had lost it in November 2021 and reported feeling unsteady when he was not using it. (*Id.*) Claimant subsequently got a new brace, which he said helped with his foot drop. (*Id.*) The ALJ found that "[t]he overall objective evidence of record does not support the [C]laimant's allegations regarding the severity of his symptoms and limitations." (*Id.*) The ALJ emphasized that updated imaging records had no significant findings, including no evidence that previously installed spinal hardware was loosening; Claimant had an unsteady gait for which he used a cane; both his primary care and pain management provider documented no acute distress; and Claimant had normal motor strength in his lower extremities with the exception of 1/5 strength in his right ankle dorsiflexion during pain management visits. (*Id.* at 37-38.) The ALJ also emphasized that during a December 2021 consultative examination, the examiner noted Claimant had a wide-based gait with some spasticity and used a cane. (*Id.* at 38.) The ALJ found persuasive the statement of Dr. Khattar that Claimant's cane was medically necessary, noting that it was "supported by the examiner's observations of the claimant's gait and consistent with the other evidence of record described herein (history of right foot drop, decreased sensation and abnormal gait in exams)." (*Id.* at 39-40.) The ALJ also noted that the opinions of the state agency medical consultants were consistent with "the other evidence of record including the conservative treatment received during the period under consideration and the exams herein which are generally remarkable primarily for use of a cane and right drop foot." (*Id.* at 40.)

Claimant argued that the ALJ's decision was not supported by substantial evidence because the ALJ included no narrative discussion in support of the ALJ's finding that Claimant needed a cane for ambulation but not balance, writing, "There is not a single sentence in the decision where the ALJ explained how he arrived at the finding that Plaintiff required a cane only for ambulation,

let alone why it was not needed for balance." (DN 13, at PageID # 821.) Claimant pointed to several medical records that he claimed supported that he needed a cane to balance as well as to ambulate. But the records cited by the Claimant were nearly all cited by the ALJ in his decision. Claimant noted that records from his rehabilitation after his 2016 car accident stated that his balance was poor even when using assistive devices and that his balance was still poor even when he was discharged from rehab. (*Id.* at 819-20 (citing R. at 254, 280, 282, 288-89, 291, 294, 296, 299, 303, 310, 320-23).) But the ALJ specifically noted Claimant participated in physical and occupational therapy and that Claimant needed assistive devices. (R. at 36-37.) Claimant pointed out that during his May 16, 2017, consultative evaluation, he used a crutch, had a slow unsteady gait, and his balance was poor. (DN 13, at PageID # 820 (citing R. at 420-23).) But the ALJ also noted those findings in his decision. (R. at 36-37 ("At that time, the claimant was ambulatory while using the single forearm crutch. He had poor balance, decreased strength in the bilateral lower extremities, and decreased sensation below the waist.").) Claimant noted that during his November 2021 visit with his primary care provider, he had unsteady gait. (DN 13, at PageID # 820 (citing R. at 604-09).) But the ALJ cited other findings from that visit in his decision, evidencing his review of the findings cited by Claimant. (R. at 37.) Claimant cited findings from his December 2021 evaluation including that he had previous used a right foot brace and was unsteady on his feet, had an antalgic gait, and had 1/5 strength in the right dorsiflexors; he also emphasized that the same findings were present in January and February 2022. (DN 13, at PageID # 820 (citing R. at 633-37, 652, 657).) Again, the ALJ noted these same findings in his decision. (R. at 38 ("He had antalgic gait and used a cane. . . . He had normal motor strength in the upper and lower extremities with the exception of 1/5 strength in right ankle dorsiflexion.").) Claimant noted he had a wide-based gait with some spasticity even when using his cane during a December

2021 consultative evaluation. (DN 13, at PageID # 820 (citing R. at 643-48).) So did the ALJ. (R. at 38 ("The claimant had a consultative physical exam in December 2021, which offers further support for the findings herein. The examiner noted the claimant had a wide-based gait with some spasticity and used a cane to ambulate.").) Given the generous overlap between the records cited by Claimant and the records cited by the ALJ, the Court rejects the notion that the ALJ failed to consider evidence of Claimant's balance, gait, and use of a cane. Instead, it appears that the ALJ considered the records Claimant believed were relevant and merely came to the opposite conclusion to that Claimant wanted him to reach. Having reviewed both the medical evidence of record and the ALJ's decision, the ALJ's decision is comprehensive on the issue of Claimant's use of a cane and the related medical evidence. Absent from the record and uncited by Claimant are instances of a provider noting Claimant needed a cane for balance as opposed to ambulation or any opinion from a provider on that point.[3] Nor does the medical evidence include instances where Plaintiff fell or reported falls while not using his cane. Given the absence of evidence regarding Claimant's need of a cane for balance, the Court finds it was not error for the ALJ to omit any narrative discussion of the same from his opinion. Instead, properly relying on the medical evidence documenting the same, the ALJ concluded that Claimant needed a cane for ambulation and included that limitation in his finding regarding Claimant's RFC. While Claimant appears to argue that the ALJ's narrative discussion of Claimant's use of a cane for ambulation is also insufficient, the Court finds this argument without merit. The medical records cited by the ALJ regarding Claimant's use of a cane and unsteady gait are a sufficient discussion to support the

---

[3] Both Claimant and the Commissioner in their brief spent time debating the meaning of the opinion of Dr. Nicholas Khattar. Dr. Khattar opined that Claimant was "limited in his ability to sit, stand, or ambulate due to his spinal cord injury" but noted in his description of Claimant's gait and station that Claimant's cane was medically necessary. (R. at 644, 648.) But Dr. Khattar did not say that Claimant needed a cane for balancing and indeed, the question under which Dr. Khattar noted Claimant's cane was medically necessary asked, "If an assistive device is used for *ambulation*, comment on its medical necessity and the patient's *ability to walk without it*." (*Id.* at 648 (emphasis added).) Thus, his opinion does not support Claimant's position.

9

ALJ's RFC determination. Accordingly, the Court finds that the ALJ's RFC analysis is supported by substantial evidence.

### III. CONCLUSION AND ORDER

For the reasons set forth above, the final decision of the Commissioner is **AFFIRMED**. A final judgment will be entered separately.

September 5, 2025

Colin H Lindsay, Magistrate Judge
United States District Court

cc:    Counsel of Record